USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/23/2014

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

  v.

CEDRIC CAÑAS MAILLARD and
JULIO MARÍN UGEDO,

        Defendants.

No. 13-cv-5299 (VEC)

**MEMORANDUM OPINION AND**
**ORDER FREEZING ASSETS AND OTHER EQUITABLE RELIEF**

VALERIE CAPRONI, District Judge:

  The Securities and Exchange Commission ("SEC") has moved for an asset freeze against Cedric Cañas Maillard ("Cañas"), in connection with Cañas's trading in contracts-for-difference ("CFDs") based on the stock of Potash Corporation of Saskatchewan, Inc., and tipping co-defendant Julio Marín Ugedo ("Marín") regarding the stock. The SEC alleges that Cañas engaged in unlawful insider trading by trading based on confidential information he gained as an employee of a bank that was assisting in the financing of a takeover bid. For the following reasons, the asset freeze is entered against Cañas.[1]

**DISCUSSION**

  Although at this stage Cañas has not seriously contested the factual basis of the SEC's claim that he engaged in insider trading, he objects to the SEC's motion on four grounds, two procedural and two substantive. First, he alleges that he has not been served and urges the Court

---

[1] The SEC also moved for a preliminary injunction requiring Cañas not to destroy evidence. Because the SEC has made no showing of the necessity of such relief, the Court denies this request. The SEC's reliance on the Second Circuit's affirmance of such a provision as "innocuous" when it was not challenged on appeal, *see SEC v. Unifund SAL*, 910 F.2d 1028, 1040 n.11 (2d Cir. 1990), is misplaced. Some showing is still required before the Court will impose injunctive relief. *See, e.g., Smith v. SEC*, 653 F.3d 121, 127-28 (2d Cir. 2011).

to dismiss this action under Fed. R. Civ. P. 4(m), which, though inapplicable to foreign service, permits courts to dismiss actions for failure to serve a complaint on a defendant within 120 days. The Court finds his argument unpersuasive. The SEC made numerous attempts to serve Cañas, including by several emails at an account from which he had previously been responsive and by United Parcel Service delivery. When those efforts were unsuccessful, not more than 154 days after the Complaint was filed, the SEC began the process for obtaining service under the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention"). Goldman Decl. ¶¶ 13-16. Although the SEC could have been more aggressive in beginning the process under the Hague Convention, its delay was not so egregious as to warrant dismissing the Complaint.[2]

Second, Cañas argues that the Court lacks personal jurisdiction over him. The Court also finds this argument unpersuasive.[3] "'The due process test for personal jurisdiction has two related components: the minimum contacts inquiry and the reasonableness inquiry.'" *SEC v. Compania Internacional Financiera S.A.*, No. 11-cv-4904(DLC), 2011 WL 3251813, at *4 (S.D.N.Y. July 29, 2011) (quoting *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 569-70 (2d Cir. 1996)). "Where a defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws,' it submits to the judicial power of an otherwise foreign sovereign to the extent that power is exercised in connection with the defendant's activities touching on the State." *J. McIntyre Machinery Ltd. v. Nicastro*, 131 S.Ct. 2780, 2787-88 (2011) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

"Purchasers of CFDs specifically target their investments at the U.S. market, as they receive the benefit or loss of any price changes on the domestic exchange, the dividends paid on the underlying shares, and sometimes receive voting rights. Indeed, CFDs provide foreign investors with a way to access American exchange-traded securities without opening U.S. brokerage accounts." *Compania*, 2011 WL 3251813, at *5 (citations omitted).

---

[2] Cañas relies on *Montalbano v. Easco Hand Tools, Inc.*, 766 F.2d 737, 740 (2d Cir. 1985), and *D. Klein & Son, Inc. v. Good Decision, Inc.*, No. 98-cv-4083(JFK), 1999 WL 349932, at *2 (S.D.N.Y. May 28, 1999), in his argument that the Complaint should be dismissed. Those cases are easily distinguishable because in those cases, the plaintiffs made *no* efforts to serve the international defendants.

[3] Cañas does not meaningfully contest personal jurisdiction for the Complaint's Count II, which alleges that he tipped Marín regarding Potash stock and that Marín traded Potash directly on the New York Stock Exchange. Compl. ¶¶ 91-94.

In this case, the SEC has presented ample evidence from which the court can conclude that Cañas was a sophisticated investor who knew that his purchases and sales of CFDs were triggering corresponding purchases and sales by Internaxx on the New York Stock Exchange (NYSE). First, these were not the first CFDs in which Cañas had traded. Second, Cañas executed trades in CFDs that were denominated in U.S. dollars and that were written to be executed with reference to the shares of Potash that were traded on the NYSE (not the company's Canadian stock). Cañas created limit orders for his purchases that were set in U.S. dollars and that reflected market conditions in the United States. The fact that those purchases took some period of time to execute on the NYSE (from 2 to 50 minutes) and the fact that some of the trades were executed on the NYSE at a price better than his limit order reinforces the conclusion that Cañas was well aware that his CFDs were conditioned on the ability of Internaxx to purchase an equivalent number of shares at the price he established by his limit order.[4] In short, there is no real question that Cañas knowingly availed himself of the market in New York, thereby taking advantage of all of the investor protections that are imposed on that exchange and its participants by the U.S. securities laws. Cañas had sufficient contact with New York for the Court to exercise specific personal jurisdiction, and it is reasonable for the Court to do so.

Third, Cañas argues that the Complaint fails to state a claim because the Supreme Court's decision in *Morrison v. Nat'l Australia Bank*, 130 S.Ct. 2869 (2010), prevents the application of Sections 10(b) at 14(e) of the Securities Exchange Act of 1934 to cover the alleged offenses. In *Morrison*, the Supreme Court held that: "Section 10(b) reaches the use of a manipulative or deceptive device or contrivance only in connection with the purchase or sale of a security listed on an American stock exchange, and the purchase or sale of any other security in the United States." 130 S.Ct. at 2888. Cañas contends that the CFDs – which he purchased in Luxembourg – were not transactions "in connection with the purchase or sale of a security listed on an American stock exchange." The Court rejects this argument for substantially the reasons given by Judge Cote in *Compania*. 2011 WL 3251813, at *6-7.[5] Cañas's transactions required

---

[4] The SEC also presented evidence that in connection with earlier trades of CFDs for Teradata, another company that trades on NYSE, Cañas also benefited from price movements on the NYSE; in that instance when he sold his CFDs he received prices for at least certain of the corresponding shares that were higher than his limit order.

[5] If Cañas's argument were correct, it would create a huge hole in the enforcement regime governing companies listed in the United States. A significant goal of the U.S. securities laws is to ensure that all investors have a level playing field and that investors are not competing against other investors who are armed with insider information. If an investor could escape that regime by the simple expedient of trading in CFDs overseas, the

Internaxx to purchase the underlying security traded on NYSE.  Although one could theoretically imagine a case in which a CFD was purchased and the seller decided not to hedge the transaction by purchasing the underlying security, that did not happen here and Cañas acknowledged during oral argument that this transaction was typical of how CFD transactions based on U.S. securities are executed.  As indicated above, Cañas set limit orders in U.S. dollars and Internaxx executed its hedge transaction on the NYSE bound by these limits before it sold Cañas the corresponding CFD.  Barrett Decl. 1 ¶¶ 36-37; *cf. Compania*, 2011 WL 3251813, at \*6; *Freudenberg v. E\*Trade Fin. Corp.*, No. 07-cv-8538(RWS), 2008 WL 2876373 (S.D.N.Y. July 16, 2008).  Cañas's gain or loss was calculated in U.S. dollars based only on "fluctuations in the price of Potash stock trading over the NYSE."  Barrett Decl. 2 ¶ 8.  Cañas's transactions were thus transactions "'in connection with the purchase or sale of a[] security registered on a national securities exchange.'"  *Morrison*, 130 S.Ct. at 2884 (quoting 15 U.S.C. § 78j(b)).

Cañas argues that the securities he purchased (CFDs) are not listed on an American stock exchange and, therefore, the Court must conduct the analysis mandated by the Supreme Court's second prong in *Morrison* and by the Second Circuit in *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 67 (2d Cir. 2012).  *See also SEC v. Tourre*, No. 10-cv-3229(KBF), 2012 WL 5838794 (S.D.N.Y. Nov. 19, 2012).[6]  The Court is unpersuaded by this crabbed reading of *Morrison*.  Although Cañas did not himself purchase a security that is listed on an American exchange, the fraudulent scheme as alleged by the SEC involved his purchasing CFDs in Luxembourg, which directly caused Internaxx to purchase securities that were listed on the NYSE.  The defendant has cited no case – and the court is aware of none – that holds the Supreme Court intended to limit the first prong of *Morrison* to transactions in which the defendant himself actually purchases or sells a listed security and to exclude transactions in

---

transparency and fairness of the U.S. markets would be seriously undermined.  Nothing in *Morrison* requires that result.

[6]     The Second Circuit held in *Absolute Activist* that "transactions involving securities that are not traded on a domestic exchange are domestic [and therefore covered by the U.S. securities laws] if irrevocable liability is incurred or title passes within the United States."  677 F.3d at 67.  If Cañas is correct that the *Morrison* analysis should focus narrowly on his CFD purchases – essentially bifurcating the fraudulent scheme alleged – then the result might be that SEC's Complaint should be dismissed for failure to state a claim.  *Morrison*, 130 S.Ct. at 2877.  This analysis would likely hinge on whether Internaxx could properly viewed as Cañas's agent in purchasing Potash shares on the NYSE.  *See, e.g., Butler v. United States*, No. 13-cv-4639, 2014 WL 216476, at \*11 (E.D.N.Y. Jan. 17, 2014) (Weinstein, *J.*).

which the defendant causes a third party, as an integral part of the alleged fraudulent scheme, to purchase or sell a listed security. Such an interpretation would run counter to the clear language of the statute, which makes it unlawful for "any person, directly or *indirectly* . . . [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange . . . any manipulative or deceptive device. . . ." 15 U.S.C. § 78j(b) (emphasis added). Although a scheme could exist in which the connection between the fraudulent behavior and the trade of a listed security is so attenuated that it cannot fairly be said that the fraud was "in connection with" the domestic transaction, this case does not involve such a scheme. Cañas's desire to draw a bright line between his fraudulent conduct and the trades in the listed securities (which he ascribes to "Internaxx's decision to purchase Potash securities," Dkt. 31 at 3), is particularly disingenuous. Internaxx's trade – which occurred only because of Cañas's purchase of corresponding CFDs – victimized the market. *See, e.g., United States v. O'Hagan*, 521 U.S. 642, 651 (1997) (prohibitions on insider trading are designed to protect the integrity of the securities market against insiders, tippers, and outsiders who capitalize on nonpublic information in their trading); *United States v. Goffer*, 721 F.3d 113, 132 (2d Cir. 2013) (insider trading "had major deleterious effects on the market" and "a corrosive influence on the integrity of the financial markets"). Although Internaxx was an unwitting player, the domestic market was harmed by the trades that were directly and inextricably bound with Cañas fraudulent conduct.

It should be noted that the decision that the Exchange Act applies in this case is based on the well-pleaded allegations in the Complaint and the statements in the declarations submitted by the SEC; this is not a conclusive determination as to the application of *Morrison* even to this case. *See, e.g.*, *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 405 (S.D.N.Y. 2010). Ultimately, this is a "merits" issue; if the evidence at trial demonstrates that there is no causal connection between Cañas's purchase of Potash CFDs and Internaxx's purchase of Potash shares on the NYSE, then the Court would analyze the location in which irrevocable liability was incurred, which might well not be domestic. *Morrison*, 130 S.Ct. at 2877; *Absolute Activist*, 677 F.3d at 67.

Finally, Cañas argues that the Court should not permit the SEC to pursue civil sanctions for his alleged insider trading on the U.S. markets because Cañas was acquitted of criminal charges in Spain. "[A]n acquittal on criminal charges does not prove that the defendant is innocent; it merely proves the existence of a reasonable doubt as to his guilt. . . . It is clear that

the difference in the relative burdens of proof in the criminal and civil actions precludes the application of the doctrine of collateral estoppel." *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 361 (1984). The Spanish court noted the hefty burden on the Government in a criminal prosecution; this burden does not extend to civil lawsuits. *See* Dkt. 26 Ex. 1 at 5. While principles of international comity favor respect for the Spanish court's decision, the preclusive effect afforded such a decision should not extend further than it would for a judgment of acquittal in a federal court in the United States. This Court respects the judgment of its Spanish counterpart and has discussed and reviewed the Spanish case at length; however, nothing from the Spanish court's criminal acquittal suggests that the SEC should be precluded from bringing a civil suit to enforce U.S. securities laws.

"To obtain an asset freeze . . . the SEC must show either a likelihood of success on the merits, or that an inference can be drawn that the party has violated the federal securities laws." *SEC v. Byers*, No. 08-cv-7104(DC), 2009 WL 33434, at *3 (S.D.N.Y. Jan. 7, 2009) (footnote omitted); *see also SEC v. Unifund SAL*, 910 F.2d 1028, 1039 (2d Cir. 1990). Here, the SEC has shown both. Aside from the challenges listed above, Cañas has not contended that the SEC will not prevail on the merits. "A continued asset freeze is appropriate to preserve the status quo pending a determination on the merits because there is a likelihood that the SEC will succeed on the merits in establishing a § 10(b) violation." *Compania*, 2011 WL 3251813, at *11. Although Cañas complains that the asset freeze sought by the SEC is too broad, the SEC is entitled upon an adequate showing (which it has made) to an asset freeze sufficient to preserve its disgorgement remedy as well as assets necessary to pay civil monetary penalties. *Unifund SAL*, 910 F.2d at 1041-42. "Congress has authorized the forfeiture of a civil penalty equal to three times the profits of insider trading, in addition to disgorgement, under Section 21A of the Exchange Act, 15 U.S.C. § 78u-1." *Compania*, 2011 WL 3251813, at *12. The Court therefore will oblige Cañas "to maintain in [his] accounts funds sufficient to pay the amounts that might eventually be due." *Unifund SAL*, 910 F.2d at 1042. The SEC may therefore freeze both the disgorgement amount (here, $917, 239.44 for Count I and $43,566.50 for Count II) and the potential civil penalty ($2,751,718.32 for Count I and $130,699.50 for Court II), for a total of $3,843,223.76.

*  *  *

**WHEREAS,** the Court has considered: (1) the Complaint; (2) the Declaration of Frank D. Goldman Pursuant to Local Civil Rule 6.1; (3) the Declaration of Kevin Barrett, and the exhibits thereto; (4) the Declaration of Carlos M. Portugal; (5) the Declaration of Luz Aguilar and the accompanying exhibit; (6) the SEC's Memorandum of Law in Support of Its *Ex Parte* Emergency Application for an Order to Show Cause, Asset Freeze, and Other Relief; (7) Cañas's Memorandum of Law in Opposition to Plaintiff's *Ex Parte* Emergency Application, (8) Plaintiff's Reply; (9) Barrett's Supplemental Declaration; (10) the opinion acquitting Cañas and Marín of related criminal charges in Spain; and (11) both parties' supplemental submissions of April 22, 2014;

**WHEREAS,** the Court held an oral argument on the SEC's requested relief on April 21, 2014; and

**WHEREAS,** the Court finds the SEC has made a *prima facie* showing that: (1) Cañas has directly or indirectly engaged in the violations alleged in the Complaint; (2) there is a reasonable likelihood the SEC will prevail at trial; (3) unless restrained and enjoined by this Order, Cañas may dissipate, conceal, or transfer assets which could be subject to an order of disgorgement or to pay a civil monetary penalty in this action; and (4) entry of an order freezing assets is necessary to preserve the status quo; and

**WHEREAS**, the Court is authorized to grant the relief set forth in this Order pursuant to the Federal Rules of Civil Procedure, its general equitable authority, and Section 21(d)(5) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u(d)(5):

## I.

**IT IS HEREBY ORDERED** that Cañas, and any of his officers, agents, servants, employees, attorneys, and those persons in active concert or participation with him who receive actual notice of such Order by personal service or otherwise, and each of them, hold and retain within their control and otherwise prevent any withdrawal, transfer, pledge, encumbrance, assignment, dissipation, concealment or other disposal of any assets and funds up to the amount of $3,843,223.76 , held by, or under the direct or indirect control of Cañas, whether held in his name or for any of his direct or indirect beneficial interests wherever situated, including, but not limited to:

1. All assets related to Cañas's purchases of 30,000 Potash CFDs, which were made between August 9 and August 13, 2010, at Internaxx, account number xxxx/xx9372DER,

located in Luxembourg, including net proceeds of approximately $917,239.44, resulting from his sale of the 30,000 Potash CFDs; and

2. All assets related to Marín's of purchases of 1,393 shares of Potash stock between August 10 and 12, 2010 through which he realized net profits of $43,566.50, for which sufficient funds are available in Cañas's account at Internaxx, account number xxxx/xx9372DER, located in Luxembourg.

## II.

**IT IS FURTHER ORDERED** that, within one week of the entry of this order, Cañas, shall repatriate all assets obtained from the activities described in the Complaint that are now located outside the territorial limits of the United States, and that Cañas direct the return of such assets to the Registry of the Court or the account of a U.S. financial institution over which this Court has jurisdiction, pending conclusion of this matter.

**Date: April 23, 2014**  
**New York, NY**

**VALERIE CAPRONI**  
**UNITED STATES DISTRICT JUDGE**